*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* FRANKLIN, Minors.

UNPUBLISHED
October 15, 2025
10:17 AM

No. 373515
Berrien Circuit Court
Family Division
LC No. 2023-000038-NA

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

Respondent-mother appeals of right the termination of her parental rights to her five minor children: KF1 (16 years old at termination); KF2 (14 years old at termination); KFH (7 years old at termination); KF3 (5 years old at termination); and KFW (23 months old at termination). The trial court found that termination of respondent-mother's parental rights was warranted pursuant to MCL 712A.19b(3)(c)(*i*) and (j), and concluded that termination was in the best interests of each child. On appeal, respondent-mother contends that the trial court failed to provide individualized findings regarding each child's best interests.[1] We affirm.

## I. FACTUAL BACKGROUND

This case began in June 2023 when two of respondent-mother's children—who at the time were 23 months old and 7 months old—tested positive for cocaine.[2] Respondent-mother spoke with petitioner, the Department of Health and Human Services (DHHS), and admitted that she had used cocaine recently, and that her cocaine usage was out of control. She also acknowledged that she had smoked marijuana with KF1, who was 15 years old at that time. The trial court ordered

---

[1] Several of the children's fathers were also named as respondents, but those fathers are not parties to this appeal, so we will not address those respondents. Respondent-mother also has an additional child, ZFW, who was dismissed from this case.

[2] The trial court later dismissed the 23-month-old child, ZFW, from the case.

that the children be placed in the custody of the DHHS. Respondent-mother subsequently pleaded no contest, so the trial court assumed jurisdiction of the children.

Over the next several months, respondent-mother participated in services such as parenting classes and a substance-abuse program. To her credit, she regularly underwent drug screening and tested negative, and the trial court noted on several occasions that respondent-mother was making progress. But in March 2024, respondent-mother's youngest child—who was approximately 16 months old—tested positive for cocaine after he was exposed to the drug in respondent-mother's home. Respondent-mother thereafter submitted to two drug screens in March 2024, and both were positive for cocaine. After that, pursuant to the trial court's order, petitioner filed a supplemental petition seeking termination of respondent-mother's parental rights to the five identified children.

The trial court held a termination hearing that started in July 2024 and ended in September 2024. During that hearing, the trial court received testimony from foster-care specialist Ellen Cox and respondent-mother. In July 2024, Cox identified respondent-mother's barriers to reunification with her minor children as substance abuse, emotional stability, parenting skills, and employment. Cox acknowledged the progress that respondent-mother had made toward rectifying her substance-abuse issue, but Cox noted that this progress ended in early 2024 when respondent-mother resumed using cocaine. Respondent-mother conceded that she had relapsed, but she stated that she was in a residential substance-abuse program, which she believed would prevent another relapse. Before the termination hearing continued in September 2024, respondent-mother finished her residential substance-abuse program, but then tested positive for cocaine two days later.

At the hearing in July, Cox stated that even if respondent-mother stayed on the right path, it would take too long for her to reach a point at which petitioner could be confident in respondent-mother's sobriety, especially considering her track record. At the September hearing, which took place after respondent-mother had completed the residential substance-abuse program but tested positive for cocaine just two days later, Cox reiterated her belief that termination of respondent-mother's parental rights was appropriate for all five children.

Beyond the substance-abuse barrier, Cox testified about instances of domestic violence that occurred between respondent-mother and the father of one of the children, including an incident in March 2024 that KF1 witnessed. With regard to the barrier of parenting skills, Cox expressed concern because respondent-mother had smoked marijuana with KF1. Respondent-mother denied that she smoked marijuana with her daughter. Additionally, Cox testified that respondent-mother rarely, if ever, cared for all of the children at the same time. She often "farmed out" the children to other caretakers. Respondent-mother testified that she put her children in others' care when she was homeless, which lasted for a period of 12 to 18 months. But she said that she obtained housing approximately one year earlier, and, now that she had a home, all of the children were in her home with her.[3] She also stated that she was active in her children's lives even when they were not living

___

[3] It is unclear what respondent-mother meant when she said this because, at the time of that hearing, respondent-mother was at a residential rehabilitation facility.

with her. But Cox testified that respondent-mother had an inappropriate bond with her oldest child, KF1, and had no bond with the other children, which respondent-mother disputed.

At the hearing, Cox provided specific testimony concerning each child. She testified that KF1 was living with her father, that things were going well in that placement, and that KF1 wanted to stay with him. Cox said that KF1 had benefited significantly from being away from respondent-mother. She was doing better in school, her relationship with her father and her step-siblings had improved, and she had stopped sneaking out of the house. But Cox explained that KF1, who was 16 years old at that time, was adamant that she did not want respondent-mother's parental rights terminated. Cox said that petitioner wanted to terminate respondent-mother's parental rights even though KF1 was living with her father because termination would limit the contact between KF1 and respondent-mother. According to Cox, the bond shared by KF1 and respondent-mother had deteriorated since this case started, and the bond that remained with KF1 was an inappropriate one. Respondent-mother disagreed, insisting that she was with KF1 all the time, and that the child had her own phone and talked to respondent-mother.

Cox also addressed KF2. As of July 2024, KF2 was living with fictive kin, a placement in which he had lived since November 2023. In that placement, KF2 had been doing very well overall and in school, which was an improvement from his past school performance. KF2's caretaker was willing to either adopt KF2 or be his guardian, but both KF2 and the caretaker wanted KF2 to be reunited with his father. Cox said that KF2 had not been asking about respondent-mother, and that he did not remember ever living with her. Cox believed that KF2 barely had a relationship with respondent-mother, but respondent-mother contended that KF2 went back and forth between her home and other caretakers, and that KF2 would stay at her home.

Turning to KFH, Cox said that she was placed in relative care with her sister, KF3, and that KFH was doing very well in that placement. While living in that placement, KFH had made a lot of progress in her education, but, despite that progress, she was still behind her classmates. KFH was enjoying spending time with her cousins, who lived in the same home. That placement was willing to adopt both KFH and KF3.

KF3 had also benefitted from being in that placement. She had dental issues when she first came into that placement, but those problems were being rectified. KF3 had struggled emotionally after visits with respondent-mother, but those struggles ended when the visits stopped. Both KF3 and KFH had exhibited some behavioral issues, which often corresponded to respondent-mother's name being mentioned.

Finally, Cox stated that KFW was placed in a licensed foster-care home and demonstrated a bond with the foster parents, who were willing to adopt him. Cox acknowledged that KFW had previously exhibited a bond with his biological parents as well, but that he had not seen either one of them since he was exposed to cocaine in March 2024.

At the conclusion of the termination hearing, petitioner asserted that the trial court should terminate respondent-mother's parental rights to all five children. The guardian ad litem mostly agreed, but argued that the trial court should not terminate respondent-mother's parental rights to KF1 because it would do more harm than good to go against her stated desire. Respondent-mother

acknowledged that she had made mistakes, but contended that she was on a good trajectory, so the trial court should not terminate her parental rights to any of the children.

The trial court determined that statutory grounds for termination of parental rights existed under MCL 712A.19b(3)(c)(*i*) and (j), and that termination of respondent-mother's parental rights was in the best interests of each of the children. In the explanation of that decision, the trial court not only made findings applicable to all of the children, but also rendered findings specific to each child. Respondent-mother now appeals.

## II. LEGAL ANALYSIS

On appeal, respondent-mother argues that the trial court erred by failing to make specific, individualized findings concerning each of the five children. Respondent-mother insists that the inadequate findings make it impossible for this Court to ascertain whether the trial court fulfilled its duty to consider the best interests of each child individually. Contrary to respondent-mother's argument, the record reveals that the trial court made ample findings for each child.

We review a trial court's findings on the best interests of the children for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The "[b]est interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App 713, 733; 858 NW2d 143 (2014). "Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *Id*. at 732-733. When determining whether termination is in the best interests of the children, the focus is on the children, not on the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). In rendering its findings, the trial court "may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). Additional considerations are the parent's history of domestic violence, the visitation history with the children, "the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. "[T]he trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts*, 297 Mich App at 42. "It is, therefore, incumbent on the trial court to view each child individually when determining whether termination of parental rights is in the child's best interests." *Id*. But when the best interests of the individual children do not significantly differ, the trial court does not err if it does not make redundant factual findings concerning each child's best interests. *In re White*, 303 Mich App at 715-716. Pursuant to MCR 3.977(I)(1), when a trial court explains its decision to terminate parental rights, "[b]rief, definite, and pertinent findings and conclusions on contested matters are sufficient."

In its rulings on October 25, 2024, the trial court spent considerable time making findings of fact and reaching conclusions of law regarding the termination of respondent-mother's parental rights. After finding that statutory grounds for termination existed,[4] the trial court then focused on whether termination of respondent-mother's parental rights was in each child's best interests.

---

[4] On appeal, respondent-mother has not challenged the trial court's findings that termination was proper under MCL 712A.19b(3)(c)(*i*) and (j). Our review of the record confirms those findings.

Considering the oldest child, KF1, the trial court found that she did not want to go back to respondent-mother's home; she preferred to stay with her father. The trial court observed that KF1 was doing well at that time, and she was attending various appointments and doing well in school. The trial court also noted that KF1 needed permanency, stability, and finality.

Referring to KF2, the trial court found that he had not lived in respondent-mother's home for an extended period of time, and, in fact, he had spent very little time living with her at all. The trial court noted that KF2 was in a relative placement, but still found that his need for permanency and stability outweighed the factors that militated against termination.

Addressing KFH, the trial court noted that she had a bond with respondent-mother, but she also had a bond with her relative placement. The trial court found that KFH was making progress in school and improving generally, and that her need for stability and permanency outweighed the fact that she was in a relative placement.

After making these individualized findings for KF1, KF2, and KFH, the trial court found that, for those three children, continued domestic violence and the failure by respondent-mother to benefit from her case service plan were additional factors that it considered.

Next, the trial court made individualized findings concerning KF3, concluding that she was bonded to respondent-mother, but she was also bonded to her relative caregiver, and KF3 enjoyed that placement. The trial court further found that KF3 was taking part in grief counseling, and she was making progress in school. Additionally, the trial court concluded that KF3 needed stability, permanence, and continuity.

Finally, regarding KFW, the trial court found that domestic violence and "serious questions regarding each parent's parenting ability," combined with KFW's need for permanency, stability, and finality, made termination of respondent-mother's parental rights in KFW's best interests.

In addition to those individualized findings, the trial court stated that respondent-mother's parenting ability was an important consideration for the best interests of all of the children. The trial court stated that "[s]moking marijuana with a teenager," "[u]sing drugs in front of children," and "allowing [children] to get a hold of drugs" did not reflect proper parenting ability. The trial court further noted the history of domestic violence in this case, that the children were doing very well in their placements, and that the children had "long-term options available to them."

To summarize, the trial court addressed each child specifically and made individualized findings. The findings clearly indicate that the trial court "view[ed] each child individually" when it determined whether termination of respondent-mother's parental rights was in each child's best interests. See *In re Olive/Metts*, 297 Mich App at 42. To the extent that the trial court rendered findings applicable to all five of the children—including that respondent-mother lacked parenting skills, there was a history of domestic violence in this case, that the children had long-term options available to them, and that they were doing well in their placements—its findings were relevant to all of the children. Under these circumstances, the trial court was not required to make redundant findings for each child. See *In re White*, 303 Mich App at 715-716.

Respondent-mother faults the trial court for not offering "a detailed exposition of how the court considered the specific bonds of each child, the unique needs of each child for permanence and stability, and the advantages of the foster home for each particular child . . . ." But respondent-mother provides no authority establishing that the trial court is required to provide such a detailed explanation. Instead, the trial court is simply required to make brief findings, MCR 3.977(I)(1), and respondent-mother has not articulated how the explanation that the trial court provided did not satisfy the requirements of MCR 3.977(I)(1).

Finally, although respondent-mother does not argue that the trial court erred when it found that termination was in each child's best interests, the record establishes that the trial court did not clearly err by finding that termination was in each child's best interests. See *In re White*, 303 Mich App at 713; *In re LaFrance*, 306 Mich App at 733. The trial court rendered findings as to several relevant factors, including the need for permanency, stability, and finality, the history of domestic violence, respondent-mother's lack of parenting ability, and the possibility of adoption, see *In re Olive/Metts*, 297 Mich App at 41-42; *In re White*, 303 Mich App at 714, and those findings were supported by the evidence. Therefore, the trial court did not clearly err by finding that termination of respondent-mother's parental rights was in the best interests of each of the five children.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates

-6-